UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TYLER MILLER, | |
| Plaintiff, | Case No. 3:20-cv-00313 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| BRIGHTSTAR INTERNATIONAL CORP. et al., | |
| Defendants. | |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

This breach-of-contract action under the Court's diversity jurisdiction arises out of Plaintiff Tyler Miller's employment with Defendant Brightstar International Corp. (Brightstar). The Court entered summary judgment in Miller's favor after finding that Brightstar breached the parties' employment agreement by furloughing Miller without pay during the COVID-19 pandemic. (Doc. Nos. 79–81.) The Court further found that Miller is entitled to compensatory damages in the amount of $141,369.86, representing the salary that Brightstar failed to pay Miller after it furloughed him in March 2020 and before it terminated his employment without cause in December 2020. (Doc. Nos. 79, 80.)

Miller has filed an amended motion for attorney's fees, costs, expenses, and prejudgment interest. (Doc. No. 89.) He argues that the Florida choice-of-law provision in the parties' employment agreement governs the requests in his amended motion, that Fla. Stat. Ann. § 448.08—which provides for awards of reasonable attorney's fees and costs to prevailing parties in actions for unpaid wages—entitles him to reasonable attorney's fees, costs, and expenses, and

that Florida common law entitles him to prejudgment interest. (Doc. Nos. 89, 90.) Brightstar argues in response that Tennessee law governs Miller's requests for attorney's fees, costs, and expenses and does not allow Miller to recover attorney's fees in this case. (Doc. No. 91.) Brightstar argues that, even if Florida law applies, Miller is not entitled to recover attorney's fees, costs, or expenses under § 448.08 because this action is not an action for unpaid wages. (*Id.*) In the alternative, Brightstar argues that the amount of attorney's fees Miller requests is unreasonable. (*Id.*) Miller has filed a reply. (Doc. No. 92.)

For the reasons that follow, the Magistrate Judge will recommend that Miller's amended motion for attorney's fees, costs, expenses and prejudgment interest be granted in part and denied in part.

## I.    Background

### A.    Factual Background

On April 9, 2018, Brightstar's subsidiary, Brightstar Asia, Ltd. (Brightstar Asia), purchased a controlling stock interest in Harvestar Solutions Limited (Harvestar), a company that Miller co-founded and co-owned. (Doc. Nos. 79, 91.) In connection with this purchase, Brightstar and Miller agreed that Brightstar would hire Miller to serve as Harvestar's general manager. (Doc. No. 79.) Brightstar sent Miller an offer letter dated April 9, 2018, that became the parties' employment agreement. (Doc. Nos. 79, 23-1.) The agreement states that Miller's employment would "be on an 'at will' basis" and that his "annual base salary [would] be $200,000[.00] . . . paid in accordance with [Brightstar's] normal payroll procedures." (Doc. No. 23-1, PageID# 219, 221.) In a section titled "Termination of Employment[,]" the agreement states:

> Upon your termination of employment for any reason, except as otherwise specifically provided below, you shall have no further entitlement under this offer letter to any compensation, including but not limited to base salary and benefits, except (a) base salary that is accrued and unpaid as of your termination of employment, and (b) any vested accrued benefits to which you are entitled pursuant

to [Brightstar]'s benefit plans. You agree to resign from all officer and director positions with [Brightstar] and its affiliates effective upon your termination of employment for any reason.

In the event you are terminated without Cause or resign with Good Reason (as both terms are defined below), you shall continue to receive your salary until the earlier to occur of:

1) the four (4) year anniversary of the date hereof;

2) the effective date that you are no longer a shareholder of Harvestar Solutions Limited (or any successor thereto); or

3) the date [Brightstar] agrees, in writing, to release you from the Restrictive Covenants Agreement, entered into between you and [Brightstar] as of April 9, 2018, and the provisions of Section 6.7 of the Share Purchase Agreement dated April 9, 2018.

(*Id.* at PageID# 219–20.) In a section titled "Governing Law[,]" the agreement states that it "shall be governed and construed in accordance with the laws of the state of Florida without regard to conflicts of law." (*Id.* at PageID# 221.) The agreement does not address attorney's fees in the event of litigation. (Doc. No. 23-1.) Miller signed the agreement and became a Brightstar employee effective April 10, 2018. (Doc. Nos. 23-1, 57, 65, 79.)

On March 24, 2020, Brightstar sent Miller an email informing him "that due to the coronavirus emergency and related business circumstances," Brightstar was placing Miller on furlough, defined as "a company-initiated temporary unpaid leave of absence." (Doc. No. 57-2, PageID# 427.) Brightstar stopped paying Miller's salary after March 27, 2020. (Doc. Nos. 65, 79.) On December 11, 2020, Brightstar sent Miller a termination letter stating that it was terminating his employment "without Cause" under the employment agreement. (Doc. No. 57-3, PageID# 432.) The letter further stated that Brightstar released Miller from the Restrictive Covenants Agreement and the provisions of Section 6.7 of the Share Purchase Agreement. (Doc. No. 57-3.)

3

## B. Procedural Background

Miller initiated this action on April 13, 2020, by filing a complaint asserting a breach-of-contract claim against Brightstar and derivative and breach-of-fiduciary-duty claims against Brightstar Asia.[1] (Doc. No. 1.) The defendants moved to dismiss Miller's complaint, arguing, among other things, that Miller's claims against Brightstar Asia could only be brought in Hong Kong courts. (Doc. Nos. 14, 15.) In response to the defendants' motion, Miller voluntarily dismissed his claims against Brightstar Asia (Doc. No. 24) and filed an amended complaint against Brightstar (Doc. No. 23). The amended complaint alleged that Brightstar breached the parties' employment agreement by failing to pay Miller's salary while he was furloughed and sought compensatory damages of over $500,000.00 in addition to prejudgment interest, attorney's fees, costs, and expenses. (Doc. No. 23.)

The parties engaged in discovery and filed cross motions for summary judgment. (Doc. Nos. 41, 56.) The Court found that Florida law applied to Miller's breach-of-contract claim based on the employment agreement's choice-of-law provision. (Doc. No. 79.) It further found that Brightstar had breached the employment agreement by failing to pay Miller his base salary during the furlough period. (*Id.*) Consequently, the Court found that Miller was "entitled to recover the $200,000[.00] annual salary he [was] owed under the Employment Agreement for the period between March 28, 2020 (the first day he did not receive his salary) and December 11, 2020 (the day he was terminated)." (*Id.* at PageID# 932.) The Court entered judgment in Miller's favor,

---

[1]     Miller's original complaint also named Harvestar as a defendant. (Doc. No. 1.) In their motion to dismiss the original complaint, Brightstar and Brightstar Asia noted that Miller did "not assert any claims or request any relief against Harvestar in the Complaint. Rather, [Miller] named Harvestar as a nominal Defendant solely for the purposes of [his] derivative claim against Brightstar Asia." (Doc. No. 15, PageID# 138 n.2.)

4

awarded him $141,369.86 in compensatory damages, and directed him to file a separate motion seeking attorney's fees, costs, expenses, and prejudgment interest. (Doc. Nos. 79–81.)

Miller filed a motion arguing that he was entitled to attorney's fees, costs, expenses, and prejudgment interest under Florida law. (Doc. Nos. 82, 84.) The Court referred Miller's motion to the Magistrate Judge for a report and recommendation. (Doc. No. 85.) The Magistrate Judge found that a choice-of-law analysis was required to determine which state or federal laws apply to Miller's requests and that the parties had not addressed choice of law in their briefing. (Doc. No. 88.) The Magistrate Judge directed the Clerk of Court to administratively terminate Miller's motion without prejudice to filing an amended motion that included a choice-of-law analysis. (*Id.*)

Miller has now filed an amended motion for attorney's fees, costs, expenses and prejudgment interest (Doc. No. 89), arguing that, under Tennessee's choice-of-law rules, the Court should apply Florida law to each request, award him $92,125.00 in attorney's fees and $2,478.45 in costs under Fla. Stat. Ann. § 448.08, and award him $3,457.61 in prejudgment interest under Florida common law (Doc. No. 90). Brightstar has responded in opposition, arguing that Tennessee's choice-of-law rules require the Court to apply Tennessee law to Miller's requests for attorney's fees and costs and that Tennessee law prohibits awarding attorney's fees for breach of contract where, as here, the underlying contract does not include an attorney's fees provision. (Doc. No. 91.) Brightstar argues that, even if Florida law applies, Miller is not entitled to attorney's fees and costs under Fla. Stat. Ann. § 448.08 because this action is not an action for unpaid wages under that statute. (*Id.*) Alternatively, Brightstar argues that, if § 448.08 does apply, the amount of Miller's attorney's fees request is unreasonable. (*Id.*) Brightstar does not contest Miller's assertion that Florida law governs his request for prejudgment interest and has not argued against Miller's proposed prejudgment interest award. (*Id.*) Miller has filed a reply, arguing that Florida law applies

to his request for attorney's fees, costs, and expenses and that the attorney's fees he seeks are reasonable. (Doc. No. 92.)

## II. Analysis

Under the *Erie* doctrine, federal courts sitting in diversity jurisdiction "apply the substantive law of the forum state and federal procedural law." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (first citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938); and then citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996)). Consistent with *Erie*, courts presented with motions for attorney's fees, costs, expenses, and prejudgment interest in diversity actions typically apply the forum state's laws regarding attorney's fees and prejudgment interest and apply federal law regarding costs and expenses. *See Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) ("In diversity cases, attorneys' fees are governed by state law."); *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000) ("In diversity cases in this Circuit, . . . state law governs awards of prejudgment interest."); *Huntsville Golf Dev., Inc. v. Brindley Constr. Co.*, Civ. No. 1-08-00006, 2011 WL 4960421, at *2 (M.D. Tenn. Oct. 18, 2011) ("In this diversity action, the granting of an award of costs is governed by Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920."); 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2669 (4th ed. updated Aug. 19, 2022) ("The award of costs is governed by federal law."). If a choice-of-law question arises in a diversity action, courts apply the forum state's choice-of-law rules. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). Tennessee is the forum state in this action.

Miller's amended motion raises a choice-of-law question regarding attorney's fees because he asks the Court to apply Florida law instead of Tennessee law based on the Florida choice-of-law provision in the parties' employment agreement. (Doc. Nos. 89, 90.) Miller raises an *Erie* question as to his request for costs and expenses because he argues that an award of costs under

Fla. Stat. Ann. § 448.08 is a matter of substantive law and that the Court should therefore apply § 448.08 instead of the familiar federal law that ordinarily governs requests for costs in diversity cases. (*Id.*) There is no dispute that Florida law governs Miller's request for prejudgment interest.

### A. Attorney's Fees

#### 1. Under Tennessee's Choice-of-Law Rules, Florida Law Governs Miller's Request for Attorney's Fees

##### a. An Actual Conflict Exists

The first step of any choice-of-law analysis under Tennessee law "is to decide whether a conflict actually exists between the relevant laws of the different jurisdictions." *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 555 (Tenn. Ct. App. 2016); *see also Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992) (holding that an actual conflict "is a necessary predicate to deciding which state's law should govern" a particular dispute). Here, an actual conflict exists between the Tennessee and Florida laws relevant to Miller's request for attorney's fees.

Tennessee law allows an award of attorney's fees in breach-of-contract actions only if the underlying contract specifically provides for recovery of attorney's fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308–09 (Tenn. 2009); *Boswell*, 498 S.W.3d at 555–56. It is undisputed that Miller and Brightstar's employment agreement does not provide for attorney's fees. (Doc. No. 23-1.) Miller thus would not be entitled to an award of attorney's fees in this action under Tennessee law. The parties disagree about whether Miller would be entitled to attorney's fees under Florida law. Miller argues that he is entitled to reasonable attorney's fees under Fla. Stat. Ann. § 448.08 (Doc. Nos. 90, 92), which provides that courts "may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." Fla. Stat. Ann. § 448.08. Brightstar argues that Miller's claim is not "an action for unpaid wages"

within the meaning of the statute.[2] (Doc. No. 91.) The Court must therefore determine whether § 448.08, if applied, would provide an attorney's fee award to Miller. If so, an actual conflict exists between Tennessee and Florida law and requires a choice-of-law analysis.

Section 448.08 does not define the term "wages," but Florida courts have adopted the definition of wages from a similar statute which provides that "[t]he term 'wages' is defined as 'all remuneration for employment, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash.'" *Gulf Solar, Inc. v. Westfall*, 447 So.2d 363, 366 (Fla. Dist. Ct. App. 1984) (quoting Fla. Stat. Ann. § 443.036(31)(a) (1981)); *see also Ferry v. XRG Int'l, Inc.*, 492 So.2d 1101, 1103 (Fla. Dist. Ct. App. 1986) (quoting Fla. Stat. Ann. § 443.036(31)(a) (1983)). Florida courts also rely on Black's Law Dictionary, which construes the term wages broadly to include "'not only periodic monetary earnings but all compensation for services rendered without regard to [the] manner in which such compensation is computed.'" *Gulf Solar, Inc.*, 447 So.2d at 366 (quoting *Wages*, Black's Law Dictionary (5th ed. 1979)); *Ferry*, 492 So.2d at 1103 (same); *see also Cmty. Design Corp. v. Antonell*, 459 So.2d 343, 346 (Fla. Dist. Ct. App. 1984) (adopting *Gulf Solar*'s definitions of wages). Employing these definitions, Florida courts have held that actions "for unpaid wages" under § 448.08 include actions to recover unpaid commissions, *Gulf Solar*, 447 So.2d at 367, bonuses, *Cmty. Design Corp.*, 459 So.2d at 346, vested interests in profit-sharing plans, *Speer v. Mason*, 769 So.2d 1102, 1104 (Fla. Dist. Ct. App. 2000), and stock options and royalty payments, *Elder v. Islam*, 869 So.2d 600, 601–02 (Fla. Dist. Ct. App. 2004), among other types of compensation.

---

[2]    Brightstar has not disputed that Miller is the prevailing party in this action for purposes of § 448.08.

Most relevant to this case is *Ferry v. XRG International, Inc.*, in which a Florida appellate court held that a plaintiff who prevailed on contractual damages claims similar to Miller's was entitled to attorney's fees under § 448.08. *See* 492 So.2d at 1103–04. The employment contract provided that, in the event Ferry left the company's employment for any reason other than just cause, the company would pay Ferry $120,000.00, the equivalent of one year's salary. *Id.* at 1102. The company terminated Ferry's employment but refused to pay him $120,000.00, so Ferry sued and a jury awarded him $132,000.00 in compensatory damages. *Id.* Ferry moved for attorney's fees under § 448.08, but the trial court denied his motion, finding that Ferry's claim was not a claim for unpaid wages within the meaning of § 448.08 because Ferry did "not claim compensation for his services . . . ." *Id.* at 1103. The Florida appellate court reversed, holding that the $120,000.00 payout provided for in the parties' employment contract "constitute[d] 'wages'" under § 448.08 because it "was an inducement to procure [Ferry's] services and to help ensure the continued quality of those services once he was employed." *Id.* at 1103–04.

Miller and Brightstar's employment agreement provided that Miller was entitled to an annual base salary of $200,000.00 and that, in the event Brightstar terminated Miller without good cause, he would be entitled to receive this salary until the earlier of: (1) the four-year anniversary of the agreement; (2) the date he ceased to be a Harvestar shareholder; or (3) the date Brightstar released him from the parties' restrictive covenants agreement and certain provisions of their share purchase agreement. (Doc. No. 23-1.) As in *Ferry*, this contracted-for compensation "was an inducement to procure [Miller's] services and to help ensure the continued quality of those services once he was employed." *Ferry*, 492 So.2d 1104. Miller's action to recover his unpaid salary is thus an action for unpaid wages within the meaning of § 448.08, and Miller would be entitled to recover reasonable attorney's fees under that statute.

Brightstar's argument to the contrary is unpersuasive. It asserts that § 448.08 "only applies to claims for accrued pay for work performed . . ." and that Miller's claims were for unaccrued wages because Miller did not perform work for Brightstar after March 25, 2020. (Doc. No. 91, PageID# 1028.) The Court has already rejected Brightstar's argument that Miller had to perform work in order to claim his salary under the employment agreement. In granting Miller summary judgment, the Court found that "there is nothing in the Employment Agreement that required Miller to perform work to receive his salary" and that "Brightstar violated the Employment Agreement by not paying Miller's salary while he remained an employee." (Doc. No. 79, PageID# 931.) In other words, under the parties' employment agreement, Miller's right to his contractual salary accrued while he remained employed regardless of whether he was performing work.[3]

---

[3]     Brightstar relies on *Joseph v. Commonwealth Land Title Insurance Co.*, 707 So.2d 376 (Fla. Dist. Ct. App. 1998), to support its argument that Miller's claim falls outside the scope of § 448.08. (Doc. No. 91.) In *Joseph*, the plaintiff sued his former employer alleging that the employer "breached a contract to employ him for three years by discharging him after three months" and requesting the salary he would have received had he continued his employment for three years. 707 So.2d at 377. The trial court entered summary judgment in favor of the employer and granted its motion for attorney's fees under § 448.08. *Id.* On appeal, the Florida appellate court reversed the attorney's fee award, finding that § 448.08 only "applies to actions to recover accrued but unpaid wages" and that the plaintiff "was suing for money that allegedly would have been due him had his employment not been terminated, that is, for unaccrued wages[.]" *Id.* Because this Court has already determined that Miller's contractual right to receive his salary from Brightstar accrued while he remained employed regardless of whether he was still performing work, *Joseph* is distinguishable. (Doc. No. 79.)

        Brightstar's reliance on two cases cited in *Joseph*—*Werthman v. School Board of Seminole County*, 599 So.2d 220 (Fla. Dist. Ct. App. 1992), and *Dade County v. Pena*, 664 So.2d 959 (Fla. 1995)—is similarly misplaced. (Doc. No. 91.) In *Werthman*, the Florida appellate court addressed the definition of the term "action" as used in § 448.08 and held that it did not encompass administrative proceedings before a local school board. 599 So.2d at 221–22. In *Pena*, the Florida Supreme Court approved the holding in *Werthman* and reversed and remanded a conflicting lower court holding that § 448.08 could apply to claims before a municipal administrative board. 664 So.2d at 960.

Because Miller would be entitled to an award of attorney's fees under the Florida statute and would not be entitled to such an award under Tennessee's breach-of-contract law, there is an actual conflict that requires a choice-of-law analysis. *See Boswell*, 498 S.W.3d at 556.

###### b. Tennessee Courts Would Honor the Parties' Choice of Florida Law for Substantive Matters

Tennessee courts generally presume that a contract is "'governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474–75 (Tenn. Ct. App. 2003)). Where, as here, the contract includes a choice-of-law clause, Tennessee courts will honor the "'clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy.'" *Boswell*, 498 S.W.3d at 556 (quoting *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012)). Neither party disputes the validity of the Florida choice-of-law provision in the employment agreement, and the Court has already applied that provision to adjudicate Miller's breach-of-contract claim.

###### c. Miller's Requested Attorney's Fees Are a Matter of Substantive Law

While Tennessee courts honor the parties' choice of law for substantive matters, they apply Tennessee law to procedural issues.[4] *Id.* Accordingly, the final step of the choice-of-law analysis

---

[4] The parties' choice-of-law provision states that their employment agreement "shall be governed and construed in accordance with the laws of the state of Florida *without regard to conflicts of law*." (Doc. No. 23-1, PageID# 221 (emphasis added).) Neither Miller nor Brightstar has argued that Tennessee courts would apply Florida law to procedural issues based on this language. Nor would such an argument be persuasive given Tennessee courts' strong interest in applying their own procedural rules. *See, e.g.*, *Boswell*, 498 S.W.3d at 556 ("Enormous burdens are avoided when a court applies its own rules, rather than the rules of another state, to issues relating to judicial administration, such as the proper form of action, service of process, pleading,

is to determine whether the award of attorney's fees Miller seeks under § 448.08 is a substantive

or a procedural issue. *Id.* at 556–57. Tennessee courts acknowledge that the line between

substantive and procedural in this context can be difficult to discern. *Id.* at 556. Substantive law is

"that part of the law which creates, defines, and regulates rights; that which creates duties, rights,

and obligations; the law which relates to rights and duties which give rise to a cause of action."

*Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 705 (Tenn. Ct. App. 1989) (quoting *Spencer*

*Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514, 518 (Tenn. 1958)). Procedural law, by contrast,

typically "'relat[es] to judicial administration, such as the proper form of action, service of process,

pleading, rules of discovery, mode of trial and execution and costs.'" *Boswell*, 498 S.W.3d at 556

(quoting *Restatement (Second) Conflict of L.* § 122, cmt. a (Am. L. Inst. 1971))). In determining

whether a law is substantive or procedural under these definitions, Tennessee courts "also consider

whether the law is 'substantive in effect' even if it would initially appear to be 'procedural in

form.'" *Id.* at 557 (quoting *Gordon's Transps., Inc. v. Bailey*, 294 S.W.2d 313, 324 (Tenn. 1956)).

Tennessee courts have held that, when another state's law

> is such that it goes to the very existence of the contract or the right of the plaintiff
> to recover, or of the defendant to resist recovery, whether that rule is to be
> denominated as one of remedy or of substance, the fact is that it affects the
> substantive rights of the parties and should therefore be applied, notwithstanding a
> contrary rule of the forum.

*Id.* (quoting *Gordon's Transps., Inc.*, 294 S.W.2d at 324).

Both Miller and Brightstar rely on the Tennessee Court of Appeals' decision in *Boswell v.*

*RFD-TV the Theater, LLC*, 498 S.W.3d 550 (Tenn. Ct. App. 2016), to support their respective

positions. In *Boswell*, a Tennessee musician filed a breach-of-contract action in Tennessee state

---

rules of discovery, mode of trial and execution and costs." (quoting *Restatement (Second) Conflict*
*of L.* § 122, cmt. a (Am. L. Inst. 1971))).

court against a music venue in Branson, Missouri, after the venue cancelled his remaining scheduled performances and refused to pay out his contract. *Id.* at 552–54. The contract provided that the prevailing party in any action arising out of the agreement would be entitled to reasonable attorney's fees and stated that it would "be governed by and construed in accordance with the laws of the State of Nebraska." *Id.* at 553. "[T]he parties agreed that Nebraska law applied to the substantive issues in the case, while Tennessee law governed procedural issues." *Id.* at 554. After a bench trial, the trial court entered judgment in the musician's favor and awarded him compensatory damages and prejudgment interest under Nebraska law. *Id.* at 554–55. In determining which state's law applied to the musician's request for attorney's fees, the trial court found that Nebraska law would prohibit an award of attorney's fees as against public policy, but "predicted that a Tennessee appellate court would hold that attorney's fees are a matter of procedural law" and apply Tennessee law, allowing the musician to recover attorney's fees under the contractual attorney's fee provision. *Id.* at 555. The trial court applied Tennessee law and awarded attorney's fees. *Id.* The venue appealed, arguing, among other things, that the trial court should have applied Nebraska law to the musician's request for attorney's fees and denied that request. *Id.*

The Tennessee Court of Appeals conducted a choice-of-law analysis and held that there was an actual conflict between the two states' laws and that Tennessee would honor the parties' choice of Nebraska law to govern substantive issues. *Id.* at 555–56. Turning to the third and final step in the choice-of-law analysis, the court recognized that "Tennessee appellate courts ha[d] not explicitly addressed whether attorney's fees are a substantive or procedural matter for purposes of conflicts of law." *Id.* at 557. The court considered decisions from several other jurisdictions that had addressed this question, some of which held that the decision to award attorney's fees in

breach-of-contract claims is substantive and others that concluded it is procedural. *Id.* at 557–60.

Before deciding which approach Tennessee law would follow, the court "emphasize[d] that the

precise issue presented in this case is narrow—is a claim for attorney's fees *pursuant to a contract*

a substantive issue governed by a choice of law provision in that contract, or is such a claim

governed by the procedural law of the forum?" *Id.* at 559. It then examined Texas's and Oregon's

approaches to attorney's fees in contracts actions, contrasting them with Nebraska's approach:

> The Texas Court of Appeals has reasoned that a contractual claim for attorney's
> fees is "part of [the] substantive claim for breach of contract." *Midwest Med. Supply
> Co. v. Wingert*, 317 S.W.3d 530, 537 (Tex. App. 2010). The court found the issue
> of attorney's fees "'inextricably intertwined with the substantive issue of
> contractual liability—an issue that is undisputably [sic] governed by the choice-of-
> law provision.'" *Id.* (quoting *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177
> S.W.3d 529, 535–36 (Tex. App. 2005)). Accordingly, the Texas court viewed the
> attorney's fee claim as a substantive contractual issue governed by the law chosen
> by the parties. *Id.* In reaching the same conclusion, the Oregon Court of Appeals
> considered that attorney's fees based on a contract must be pled and proved and
> "are not merely costs incidental to judicial administration," therefore, awarding
> them is a matter of substantive right. [*Seattle-First Nat'l Bank v.* ]*Schriber*, 625
> P.2d [1370,] 1373 [(Or. Ct. App. 1981)]. In contrast, the Nebraska Supreme Court
> considers attorney's fees to be elements of court costs that affect only the remedy,
> rather than damages. *Neb. Nutrients*[*, Inc. v. Shepherd*], 626 N.W.2d [472,] 518[
> (Neb. 2001)]. The Nebraska Court considers an attorney's fee provision to be "a
> stipulation for costs" that "is not a substantive part of the contract itself and cannot
> be enforced in another jurisdiction." *Id.* (quotation omitted).

*Boswell*, 498 S.W.3d at 559–60 (first alteration in original). The Tennessee Court of Appeals held

that "Tennessee's view of contractual attorney's fees is more in line with the courts of Texas and

Oregon" because, "[i]n Tennessee, attorney's fees are not part of costs." *Id.* at 560 (quoting *Barrett

v. Town of Nolensville*, No. M2010-01173-COA-R3-CV, 2011 WL 856923, at *2 (Tenn. Ct. App.

Mar. 10, 2011)). It further held that "[c]ontracts providing for attorney's fees impose a contractual

liability that one enforces as a matter of substantive right" and that "[r]ules regarding the recovery

of contractual attorney's fees define the parties' rights and obligations." *Id.* The Tennessee Court

of Appeals therefore "conclude[d] that a state's rules regarding the recovery of contractual

attorney's fees are substantive rules governing the substantive rights of the parties." *Id.* It cautioned, however, that this "holding . . . should not be construed as a broad holding regarding all types of claims for attorney's fees in Tennessee." *Id.* at 560 n.5. Applying this holding to the facts in *Boswell*, the court held that "Boswell's claim for attorney's fees pursuant to the attorney's fee provision in the Contract is part and parcel of his substantive claim for breach of contract" and "should be governed by the choice-of-law provision in that same contract." *Id.* at 560. It therefore applied Nebraska law, held that the attorney's fee provision in the contract was unenforceable, reversed the trial court's ruling on attorney's fees, and vacated the attorney's fees award. *Id.* at 560–62.

Brightstar argues that the holding in *Boswell* does not resolve the question presented in this case because the *Boswell* court addressed attorney's fees sought under a contractual attorney's fee provision and not under a state statute. (Doc. No. 91.) But a careful reading of *Boswell* demonstrates that the Tennessee Court of Appeals' holding that "contractual attorney's fees" are substantive for conflicts-of-law purposes may encompass claims for attorney's fees in breach-of-contract actions that arise under state statutes, like Miller's claim. In discussing the Texas Court of Appeals' holding in *Midwest Medical Supply Co. v. Wingert*, the *Boswell* court characterized the claim for attorney's fees in that case as "a contractual claim for attorney's fees[,]" *Boswell*, 498 S.W.3d at 559, notwithstanding the fact that the underlying contract did not contain an attorney's fee provision and the plaintiff instead sought attorney's fees under a state statute, *Midwest Medical Supply Co.*, 317 S.W.3d at 533–34. Specifically, the plaintiff, who had prevailed on its breach-of-contract claim applying the contract's Missouri choice-of-law provision, sought attorney's fees pursuant to a Texas statute that allowed recovery of reasonable attorney's fees in

contract actions.[5] *Midwest Medical Supply Co.*, 317 S.W.3d at 533–34 (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (2007)). In determining which state's law to apply to the plaintiff's attorney's fees claim, the Texas Court of Appeals held that the claim arose directly from the defendant's breach of the contract that contained the Missouri choice-of-law provision and was thus "part of [the plaintiff's] substantive claim for breach of contract." *Id.* at 537. It further held that "the recovery of attorneys' fees for breach of a contract is a substantive, not a procedural issue, and will be governed by the law governing the substantive issues." *Id.* The Texas Court of Appeals therefore declined to apply Texas law to the attorney's fees claim, instead applied the parties' Missouri choice-of-law provision, and denied the claim for attorney's fees under Missouri law. *Id.* Given the *Boswell* court's characterization of the statutory claim for attorney's fees in *Midwest Medical Supply Co.* as a contractual claim for attorney's fees and its reliance on the Texas Court of Appeals' reasoning in that case, *Boswell*'s holding "that a state's rules regarding the recovery of contractual attorney's fees are substantive rules governing the substantive rights of the parties" may be applied to claims for attorney's fees in breach-of-contract actions that, like Miller's, arise under state statutes. *Id.* at 560.

Even if this Court reads *Boswell*'s holding more narrowly to encompass only claims for attorney's fees arising under contractual attorney's fees provisions, the logic underpinning *Boswell*'s holding that such claims are substantive applies with equal force to Miller's claim for attorney's fees here. As the Texas Court of Appeals held in *Midwest Medical Supply Co.*, regardless of whether it arises under a contractual provision or under state law, "[a] claim for attorneys' fees for breach of contract is not an independent cause of action." 317 S.W.3d at 537.

---

[5]     The same Texas statute also allowed recovery of attorney's fees in actions for "rendered services," "performed labor," and other actions. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(1), (2) (2007).

But for Miller's breach-of-contract claim, he could not assert a claim for attorney's fees against Brightstar under either Tennessee or Florida law. Miller's claim for attorney's fees therefore "'arises directly from a breach of the contract containing the [Florida] choice-of-law provision[ ]'" and "'is inextricably intertwined with the substantive issue of contractual liability—an issue that is [i]ndisputably governed by the choice-of-law provision[.]'" *Id.* (quoting *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 535–36 (Tex. App. 2005)). Miller's claim for attorney's fees is thus part of his substantive claim for breach of contract. *See id.* Florida's rules governing recovery of attorney's fees for breach-of-contract "are substantive rules governing the substantive rights of the parties[,]" *Boswell*, 498 S.W.3d at 560, and the Court should apply Florida law to Miller's request for attorney's fees.[6] *See also Doyal v. Sch. Bd. of Liberty Cnty.*, 415 So.2d 791, 793 (Fla. Dist. Ct. App. 1982) ("In enacting Section 448.08, the Legislature intended to avoid the inequity which would result if an employee were required to pay her own attorney's fees in actions for unpaid wages.").

### 2. Miller's Requested Attorney's Fees are Reasonable

Miller is entitled to an award of reasonable attorney's fees under Fla. Stat. Ann. § 448.08 for the reasons explained above. The remaining question for the Court regarding attorney's fees is whether Miller's requested award of $92,125.00 is reasonable.

Florida has essentially adopted the federal lodestar approach to determining reasonable attorney's fees. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985). This

---

[6]     Brightstar's contention that the *Boswell* court implicitly adopted an Idaho Supreme Court holding, *Houston v. Whittier*, 216 P.3d 1272, 1283 (Idaho 2009), and a Texas Court of Appeals' holding, *Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 353–54 (Tex. App. 2013), regarding the difference between discretionary and mandatory statutory attorney's fees awards for conflicts-of-law purposes merely by citing those cases in its survey of other jurisdictions' decisions is without merit.

approach requires courts to calculate a lodestar figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorneys. *Id.* The party moving for fees bears the burden of "present[ing] records detailing the amount of work performed" and "establishing the prevailing 'market rate,' i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services." *Rowe*, 472 So.2d at 1150, 1151; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). Florida courts consider the following factors in determining reasonable attorney's fees:

> (1)    The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

*Rowe*, 472 So.2d at 1150.

Miller's counsel, Eugene N. Bulso, has provided an affidavit stating his and attorney Nicholas D. Bulso's hourly rates, experience, and qualifications, and attaching a chart detailing the hours expended and fees charged for their and their paralegal's work in this matter. (Doc. Nos. 83, 83-1.) Eugene Bulso's hourly rate ranges from $525.00 to $575.00; Nicholas Bulso's hourly rate ranges from $200.00 to $250.00; and their paralegal's services were billed at $150.00

per hour. (Doc. Nos. 83, 83-1.) Bulso states that he is "familiar with the legal fees customarily charged by attorneys in this community" and that "[t]he legal services and hourly rates reflected in [the chart] are consistent with those charged by attorneys having similar background, education, experience, and ability." (Doc. No. 83, PageID# 943, ¶ 9.) Bulso further states that the chart does "not include[ ] . . . any fees or expenses that relate to the claims initially filed in this action against [Brightstar Asia]." (*Id.* at ¶ 10.)

Brightstar has not challenged any of the claimed hourly rates. However, Brightstar argues that it is unreasonable for Miller to claim "any fees incurred prior to June 26, 2020[,]" when the Court entered an order dismissing Miller's claims against Brightstar Asia based on Miller's June 24, 2020 notice of voluntary dismissal. (Doc. No. 91, PageID# 1034.) Brightstar states that "[t]here is no rational explanation or basis for why [Miller] should be awarded fees for work associated with claims that were voluntarily dismissed." (*Id.* at PageID# 1033.) Brightstar also argues that it was unreasonable for Nicholas Bulso to bill four-and-a-half hours for drafting a response to Brightstar and Brightstar Asia's motion to dismiss the original complaint on June 25, 2020, because Miller had filed his notice of voluntary dismissal and amended complaint the day before and because Miller never filed the response to the defendants' first motion to dismiss. (Doc. No. 91.) Brightstar further argues that it is unreasonable for Miller to claim any fees incurred after November 23, 2020, when Brightstar made an offer of judgment to Miller in the amount of $135,260.04 "inclusive of any and all damages, relief, attorneys' fees, and expenses, and the costs accrued to date, that could be claimed, requested, or recovered by [Miller] in this action." (Doc. No. 91-1, PageID# 1039, ¶ 1.)

Miller responds that he has not claimed any fees for work on his claims against Brightstar Asia and, as stated in his counsel's declaration, the chart of claimed hours and fees excludes any

work performed on those claims. (Doc. No. 92.) He argues that it was reasonable for his attorneys to draft a response in opposition to the defendants' motion to dismiss his original complaint, especially because Brightstar "refiled its motion" after Miller filed his amended complaint. (*Id.* at PageID# 1049.) Miller argues that the fees he incurred after rejecting Brightstar's offer of judgment are reasonable because the judgment he obtained from the Court—$141,369.86 in damages plus the possibility of costs and attorney's fees—is more favorable than Brightstar's offer. (Doc. No. 92.)

Considering the relevant factors, the time entries prior to June 26, 2020, are reasonable. Miller's counsel has stated under penalty of perjury that none of these entries are for work on Miller's claims against Brightstar Asia. (Doc. No. 83.) It was reasonable for Miller's attorneys to work on drafting a response in opposition to Brightstar's arguments in the first motion to dismiss. The fact that they ultimately did not file that response, by itself, does not mean that they cannot be compensated for the time reasonably spent drafting it. *Cf. Club Madonna, Inc. v. City of Miami Beach*, No. 13-cv-23762, 2015 WL 13740727, at *15 (S.D. Fla. Aug. 10, 2015) ("[T]he mere fact that [defendant] never filed [its] motion [for summary judgment] does not make the time not compensable."). The docket shows that the Court found the first motion to dismiss moot the day before the deadline for Miller to file a response in opposition to that motion. (Doc. No. 27); *see* M.D. Tenn. R. 7.01(a)(3) (response) (providing that "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion"). It further shows that, two weeks later, Brightstar filed a second motion to dismiss that repeated arguments from its first motion (Doc. Nos. 31, 32) and that Miller filed a response in opposition to the second motion to dismiss (Doc. No. 34). Miller's counsel's work drafting a

response to the first motion to dismiss was therefore reasonable and relevant to Miller's response to the second motion to dismiss.

The fees Miller incurred after rejecting Brightstar's November 23, 2020 offer of judgment are also reasonable. Brightstar concedes that its offer of judgment was for less money than the compensatory damages the Court has already awarded Miller and would have prohibited Miller from seeking attorney's fees and costs. (Doc. Nos. 91, 91-1.) Considering the results obtained, Miller's claimed attorney's fees after November 23, 2020, are reasonable. Brightstar has not presented any contrary legal authority. It cites *Payne v. River Rocks LLC*, No. 6:15-cv-1727, 2017 WL 976634 (M.D. Fla. Feb. 22, 2017), and *Haworth v. Nevada*, 56 F.3d 1048 (9th Cir. 1995), for the proposition that the Court may consider its rejected offer of judgment in determining whether Miller's requested fees are reasonable. (Doc. No. 91.) In *Payne*, the court found that even a plaintiff's rejection of an offer of judgment "which ultimately proves to be more favorable than the final judgment[ ] is just one factor to consider in determining whether the lodestar should be adjusted." 2017 WL 976634, at *8. Similarly, in *Haworth*, the Ninth Circuit held that, "in a[ ] [Fair Labor Standards Act] case when a Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, these circumstances must be considered by the district court in determining what fee is reasonable." 56 F.3d at 1052. It is undisputed that Brightstar's offer of judgment was less favorable than the judgment Miller obtained from this Court.

Brightstar has not shown that Miller's requested attorney's fees are unreasonable, and the Court should adopt Miller's proposed lodestar figure and award attorney's fees in the amount of $92,125.00.[7]

---

[7]     This lodestar represents the following breakdown of hours and rates for the attorneys and paralegal. For Eugene Bulso: 72.9 hours billed at $525.00 per hour ($38,272.50) and 10.3 hours billed at $575.00 per hour ($5,922.50). For Nicholas Bulso: 155 hours billed at $200.00 per hour

### B. Costs and Expenses

"In [a] diversity action, the granting of an award of costs is governed by Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920." *Huntsville Golf Dev., Inc.*, 2011 WL 4960421, at *2; *see also Henkel v. Chicago, St. P., M. & O. Ry. Co.*, 284 U.S. 444, 446 (1932) (holding that "when the Congress has prescribed the amount to be allowed as costs, its enactment controls" even where state laws exist regarding costs). Some courts recognize an exception to this general rule "when a state law damages provision permits a prevailing party to recover costs as an element of compensatory damages[;] [then] the issue of costs is one of substantive law, and state law trumps federal procedural law." *Bressi v. Elenbaas Steel Supply Co.*, No. 1:12-CV-736, 2013 WL 6147386, at *1 (W.D. Mich. Nov. 22, 2013).

Relying on *Bressi*, Miller argues that the Court should apply Florida law to his request for costs because § 448.08 "allows the prevailing party in an action for unpaid wages to recover costs of the action." (Doc. No. 90, PageID# 1009). There is no dispute that § 448.08 allows prevailing parties in actions for unpaid wages to recover costs in addition to reasonable attorney's fees, Fla. Stat. Ann. § 448.08, but Miller has not shown that recovery of costs under § 448.08 is an element of compensatory damages or that the costs component of § 448.08 is otherwise substantive. In *Bressi*, the court applied federal law governing costs after finding that a Michigan statute providing "that 'any of the fees' of witnesses may be taxed as costs" was "a generic state rule of procedure" because it did "not provide an extraordinary liability for a specific kind of claim" and did "not go beyond payment of what is generally known as 'costs.'" 2013 WL 6147386, at *2 (quoting Mich. Comp. Laws § 600.2405(1)). The same is true of § 448.08. Miller has not presented any authority

---

($31,000.00) and 65.5 hours billed at $250.00 per hour ($16,375.00). For their paralegal: 3.7 hours billed at $150.00 ($555.00).

delineating the types of costs that are compensable under § 448.08. There is therefore no basis to find that § 448.08 provides for recovery of anything beyond general costs. Thus, under *Erie*, the Court should apply federal law to Miller's request for costs and expenses.[8]

"Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited and represents those expenses, including, for example, court fees, that a court will assess against a litigant." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2666 (4th ed. updated April 2022). "'Expenses[ ]' . . . include all the expenditures actually made by a litigant in connection with the action." *Id.* Consequently, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.*

Rule 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The costs that courts may award under Rule 54(d) are limited to those listed in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Section 1920 provides for the taxation of the following six categories of costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

---

[8]     Brightstar argues in a footnote that "costs are a matter of state law" and that Tennessee law governs Miller's requests for costs. (Doc. No. 91, PageID# 1027 n.3.) This argument is unsupported and does not persuade the Court that application of federal law to Miller's request for costs is inappropriate.

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A party seeking payment under § 1920 must file an itemized bill of costs. *Id.*

Miller has filed an itemized bill of costs seeking payment for copying expenses, online legal research fees, court fees, parking fees, delivery fees for a delivery to opposing counsel, deposition transcript fees, videographer fees, and court reporter fees totaling $2,478.45. (Doc. No. 83-1.) Some of these requests fall outside the scope of the costs allowed under § 1920. For example, courts in this district typically find that the cost of electronic legal research is not recoverable under § 1920 and that "the general industry practice in the Middle District of Tennessee [is to] bill[ ] such charges to clients." *Doe v. Wilson Cnty. Sch. Sys.*, Civ. No. 3:06-0924, 2008 WL 4372959, at *13 (M.D. Tenn. Sept. 22, 2008); *see also Specialty Med. Prods., Inc. v. Hall*, No. 3:14-cv-1152, 2016 WL 8540835, at *12 (M.D. Tenn. Sept. 23, 2016) (stating that "litigation expenses that are not allowed under § 1920" include "computer research expenses"). Parking fees are also outside the scope of § 1920. *See Capitani v. World of Miniature Bears, Inc.*, No. 3:19-cv-00120, 2022 WL 587580, at *5 (M.D. Tenn. Feb. 25, 2022), *report and recommendation adopted by* 2022 WL 3334347 (M.D. Tenn. Aug. 11, 2022). As are delivery and courier fees for delivering litigation documents. *See Keatley v. Escape Game, LLC*, No. 3:21-cv-00230, 2022 WL 1432552, at *8 (M.D. Tenn. May 5, 2022) (finding that "plaintiff ha[d] not shown that . . . payments to 'couriers' for 'shipment of documents' fall within the scope of § 1920"); *Ferro Corp. v. Cookson Grp.*, No. 1:06CV3070, 2008 WL 5704456, at *6 (N.D. Ohio June 9, 2008) (finding that "courier fees incurred for delivery of pleadings . . . do not fit within any of the enumerated categories in 28 U.S.C. § 1920").

Miller seeks $245.00 for the cost of a "[v]ideographer" on February 3, 2021, but he has not provided any further details that would allow the Court to determine that this cost falls within the scope of § 1920. (Doc. No. 83-1, PageID# 951.) Even if the Court were to assume that Miller paid to videotape a deposition, Miller has also sought $492.05 in "[d]eposition transcript fee[s]" (*id.*), and at least one court in this district has found that the language of § 1920, as amended in 2008, allows "a prevailing party to recover the costs of a stenographic transcription or videotaping of a deposition, but not both." *Riddle v. First Tenn. Bank, Nat'l Assoc.*, No. 3:10-cv-00578, 2011 WL 6740334, at *2 (M.D. Tenn. Dec. 20, 2011).

Miller therefore may not recover costs in the amounts of $876.39 for legal research, $12.32 for parking, $26.00 for a delivery to opposing counsel, or $245.00 for a videographer. The remaining $1,318.74 in copying costs, court fees, deposition transcript fees, and court reporter fees are compensable under § 1920.[9]

## C.    Prejudgment Interest

Federal courts sitting in diversity jurisdiction apply state law to requests for prejudgment interest. *First Heights Bank, FSB*, 229 F.3d at 542. The Sixth Circuit has instructed courts to "look to the law of the state that governs the cause of action when assessing prejudgment interest." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 258 (6th Cir. 2012). The parties agree that Florida law, which the Court applied to Miller's breach-of-contract claim, also governs Miller's request for prejudgment interest. (Doc. Nos. 90, 91.) Florida law provides "that if a plaintiff establishes that he sustained out-of-pocket loss, prejudgment interest must be awarded from the date of the loss." *Summerton v. Mamele*, 711 So.2d 131, 133 (Fla. Dist. Ct. App. 1998) (citing

---

[9]    To the extent Brightstar argues that Miller is not entitled to recover any costs incurred before June 26, 2020, or after November 23, 2020, these arguments fail for the same reasons Brightstar's arguments against attorney's fees for these time periods fail.

*Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985)). Courts have "no discretion with regard to awarding prejudgment interest and must do so applying the statutory rate of interest in effect at the time the interest accrues." *Id.* Miller argues that calculating the relevant rates leads to a total prejudgment interest award of $3,457.61. (Doc. Nos. 84-1, 90.) Brightstar has not contested this award, and the Court should grant it as unopposed.

### III.      Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Miller's amended motion for attorney's fees, costs, expenses, and prejudgment interest (Doc. No. 89) be GRANTED IN PART AND DENIED IN PART.

Miller's requests for $92,125.00 in attorney's fees and for $3,457.61 in prejudgment interest should be GRANTED.

Miller's request for $2,478.45 in costs and expenses should be GRANTED IN PART AND DENIED IN PART, and the Court should award Miller $1,318.74 in costs.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 17th day of November, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge